FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 04, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

HELEN L.,[1]

        Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,[2]

        Defendant.

No.   4:19-CV-05022-EFS

**ORDER DENYING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND GRANTING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

      Before the Court are the parties' cross summary-judgment motions.[3]

Plaintiff Helen L. appeals a denial of benefits by the Administrative Law Judge

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by

first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration.

Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R.

Civ. P. 25(d).

[3] ECF Nos. 15 & 16.

(ALJ). She alleges the ALJ erred by 1) improperly weighing the medical opinions; 2) improperly determining that the impairments did not meet or equal a listed impairment; 3) discounting Plaintiff's symptom reports; 4) failing to properly consider lay statements; and 5) improperly determining step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 15, and grants Defendant's Motion for Summary Judgment, ECF No. 16.

## I.     Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[5] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(c), 416.920(c).

[11] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[12] *Id.* §§ 404.1520(d), 416.920(d).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II. Factual and Procedural Summary

Plaintiff filed a Title II application, alleging a disability onset date of May 2, 2013.[19] Plaintiff meets the insured status requirements through December 31, 2018.[20] Her claim was denied initially and upon reconsideration.[21] An administrative hearing was held before Administrative Law Judge Mark Kim.[22]

In denying Plaintiff's disability claim, the ALJ made the following findings:

---

[15] 20 C.F.R. §§ 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[16] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 82.

[20] AR 18.

[21] AR 110.

[22] AR 39-79.

- Step one: Plaintiff had not engaged in substantial gainful activity since May 2, 2013, the alleged onset date;

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, osteoarthritis of the knees, obstructive sleep apnea, insomnia, obesity, major depressive disorder, and generalized anxiety disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  [T]he claimant could occasionally stoop kneel, and climb ramps and stairs but never crouch, crawl, or climb ladders or scaffolds. The claimant should avoid all exposure to extreme cold and unprotected heights. She would be limited to work with simple routine tasks and be limited to only occasional and superficial interaction with the public and only occasional interaction with coworkers.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in

significant numbers in the national economy, such as cafeteria attendant, cannery worker, and price marker.[23] When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinion of the testifying medical expert, Donna Veraldi, Ph. D.; and the reviewing opinions of the state agency consultants, James Bailey, Ph.D. and Dan Donahue, Ph.D.; and

- partial weight to the evaluating opinions of Drew Stevick, M.D. and N.K. Marks, Ph.D.[24]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[25] And the ALJ gave little weight to the lay testimony of Plaintiff's daughter.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[26] Plaintiff timely appealed to this Court.

---

[23] AR 16-30.

[24] AR 25-28.

[25] AR 23.

[26] AR 28.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[27] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[30] The Court considers the entire record as a whole.[31]

---

[27] 42 U.S.C. § 405(g).

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[29] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[30] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[31] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[32] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[33] The party appealing the ALJ's decision generally bears the burden of establishing harm.[34]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff failed to establish error.

Plaintiff challenges the ALJ's assignment of partial weight to the examining opinion of N.K. Marks, Ph.D. The record reflects that Dr. Marks evaluated Plaintiff on April 25, 2015.[35] Dr. Marks diagnosed Plaintiff with anxiety disorder and depressive disorder, due to another medical condition. Dr. Marks opined that Plaintiff showed high cognitive abilities and good social judgment, was intelligent, and had an excellent fund of knowledge, good short and long-term memory, and excellent verbal abstract reasoning skills. Dr. Marks assigned Plaintiff a good prognosis on the basis that the Plaintiff's impairments could be treated with counseling, medication, and financial support.[36] Dr. Marks also opinned Plaintiff would have a difficult time holding down a job due to pain, depression, and anxiety;

---

[32] *Molina*, 674 F.3d at 1111.

[33] *Id.* at 1115 (quotation and citation omitted).

[34] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[35] AR 434-38.

[36] AR 438.

Plaintiff's pain was distracting and she would likely make mistakes; has poor energy and persistence due to depression; and that Plaintiff's anxiety will hinder her in learning new tasks and interacting with others.[37] Based on these mental and physical limitations, Dr. Marks opined that Plaintiff presented as a poor work candidate until her depression and anxiety were resolved and her chronic pain was impacted.[38]

Dr. Marks' opinion was contradicted by the reviewing opinion of Dr. Veraldi, who opinioned that Plaintiff's depression and anxiety caused moderate limitations, and that Plaintiff could perform simple, routine, and repetitive work that was performed away from crowds.[39] Accordingly, the ALJ who is tasked with weighing conflicting medical opinions was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Marks' opinion.[40] Here, the

---

[37] *Id.*

[38] *Id.*

[39] AR 48-49.

[40] The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician, and 3) a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating physician. *Id.* However, when a treating physician's opinion is contradicted by another physician's opinion, it may be rejected with "specific and

ALJ discounted Dr. Marks' testimony because it was internally inconsistent and not consistent with the record as a whole.[41]

First, the ALJ's finding that Dr. Marks' opinion was internally inconsistent is rational and supported by substantial evidence. As previously mentioned, Dr. Marks' treatment notes identified Plaintiff as intelligent with high cognitive and good social judgment, and demonstrated adequate concentration, persistence and pace through the interview, but nonetheless opined that Plaintiff had poor persistence due to depression and that Plaintiff would have trouble learning new tasks.[42] That Dr. Marks' assessment conflicted with her own report was a clear and convincing reason to discount the opinion.[43]

Second, the ALJ's finding that Dr. Marks' opinion was inconsistent with the record as a whole is also rational and supported by substantial evidence. This is an

_____

legitimate reasons" supported by substantial evidence in the record. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record.).

[41] AR 27.

[42] AR 438.

[43] *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejecting the examining psychologist's functional assessment as it conflicted with his own written report and test results).

appropriate consideration for an ALJ, as an ALJ may discount an opinion that is neither consistent with nor supported by the record.[44] Here, when summarizing the medical evidence, the ALJ highlighted the reviewing opinions of state agency consultants, James Bailey, Ph.D. and Dan Donahue, Ph.D., who opined that Plaintiff was capable of remembering, understanding, and carrying out short simple instructions, and having superficial public interactions.[45] The ALJ also highlighted mental health evaluations that showed Plaintiff had full orientation, intact immediate memory, average intelligence, sufficient concentration, cooperative interactions, and self-reported poor judgment, but presented as tearful, depressed, and anxious.[46] These evaluations assessed Plaintiff with major depressive disorder and moderate anxiety and recommended individual therapy and psychoeducation.[47] The ALJ further highlighted the fact that Plaintiff's symptoms improved with medication, that she stopped attending counseling in February 2015, and was discharged from therapy in April 2015 for failure to respond or attend counseling sessions.[48] The ALJ found that these conditions

---

[44] *Lingenfelter*, 504 F.3d at 1042.

[45] AR 27, 90-91, & 106-07. Plaintiff does not object to the opinions of Dr. Baily or Dr. Donahue, or the weight given to each by ALJ.

[46] AR 26, 352.

[47] AR 352, 635.

[48] AR 26, 516, & 522.

support that the severity of Plaintiff's impairments "wax and wane," but overall are well managed with medications. On this record, the ALJ's finding that Dr. Marks' opinion was inconsistent with the objective medical record is supported by specific, substantial evidence. This was a specific and legitimate reason to discount Dr. Marks' opinion.

Plaintiff failed to establish that the ALJ erred by discounting Dr. Marks' opinion.

**B.    Step Three Listings: Plaintiff failed to establish error.**

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet Listings 1.02A (major dysfunction of joint(s)) and 1.04A (disorders of the spine), singly, or in combination; and did not meet Listings 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive compulsive disorders), singly, or in combination, based on Dr. Marks' opined marked limitations in the "B" criteria and found "C" criteria.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.[49] The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."[50] To meet a listed impairment, a claimant must establish that she

---

[49] 20 C.F.R. § 404.1520(a)(4)(iii).

[50] 20 C.F.R. § 404.1525.

meets each characteristic of a listed impairment relevant to her claim.[51] If a claimant meets the listed criteria for disability, she will be found to be disabled.[52] The claimant bears the burden of establishing she meets a listing.[53]

Plaintiff fails to establish that the ALJ erred at step three.

1.  Listing 1.02A

Listing 1.02 is satisfied by a gross anatomical deformity, e.g., subluxation, contracture, bony or fibrous ankylosis, instability, and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s). *Id.* There must be findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). *Id.* Paragraph A covers the involvement of one major peripheral weight-bearing joint, such as a knee, resulting in the inability to ambulate effectively:

> [t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of

---

[51] 20 C.F.R. § 404.1525(d).

[52] 20 C.F.R. § 404.1520(a)(4)(iii).

[53] *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

assistive devices does not, in and of itself, constitute effective ambulation.[54]

The ALJ found that Plaintiff's physical impairments do not meet or medically equal the requirements of Listing 1.02.[55] The record shows that medical reports regularly reported Plaintiff had a normal gait and negative signs of joint swelling, and that Plaintiff reported exercising by walking, driving a vehicle, and completing most activities of daily living.[56] On this record, the ALJ's finding that there was no

---

[54] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B(2)(b).

[55] AR 19.

[56] AR 717 ("No edema in bilateral lower extremities. No joint swelling."); AR 728, 741, 764, 828, 835, & 841 ("Negative for joint swelling and arthralgias."); AR 863 (At time of discharge, Plaintiff "[v]oiding, ambulating, ongoing flatus."); AR 876 ("normal gait"); AR 418 ("Normal range of motion . . . Gait favors right side, able to stand on toes and heels."); AR 248 (Plaintiff claims to use a cane "only when [her] legs don[']t want to work."); AR 54 & 436 (noting feeds grandson, assists grandson with homework, and takes grandson to and from school); AR 795 ("[Plaintiff] reports she has increased her walking since last session."); AR 436 ("[Plaintiff] reports being able to complete most of her activities of daily living such as washing her laundry, shopping, cooking, dressing and bathing herself, albeit with some pain with bending or walking too long."); & AR 245 (Plaintiff reported being able to drive a vehicle on her own when going out.).

evidence in the record showing use of assistive devices for ambulation and that the medical records supported that Plaintiff could ambulate effectively, is supported by substantial evidence.[57]

The ALJ's consideration of Listing 1.02 was not deficient.

2. Listing 1.04A

In order to meet Listing § 1.04A, a claimant must establish: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitations of motion of the spine; (3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or reflex loss, and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[58]

---

[57] AR 19.

[58] *Gnibus v. Berryhill*, No. 15-1669, 2017 WL 977594, at *4 (E. D. Cal. March 13, 2017) (finding Listing 1.04A was met) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")). Further, the claimant must establish the impairment satisfies the 12-month durational requirement. *Id.* at *7 (internal citations omitted); *see also Stewart v. Colvin*, 674 Fed . App'x 634, 635 (9th Cir. 2017) (Plaintiff failed to carry his burden of establishing that he met all of the criteria for Listing 1.04A.).

The ALJ found that Plaintiff's physical impairments do not meet or medically equal the requirements of Listing 1.04. The ALJ recognized that the medical record showed mild lower spondylosis without significant spinal canal narrowing, L5-S1 had small broad-based disc bulge with superimposed dorsolateral disc protrusion along with facet arthropathy, which resulted in mild moderate left and mild right neutral foraminal narrowing with some suggested existing L5 nerve root effacement, but determined that there was no evidence in the record of motor loss.[59] Thus, the ALJ's consideration of Listing 1.04 was not deficient

3. <u>Listings 12.04 and 12.06</u>

As discussed above, the ALJ rationally discounted Dr. Marks' opinion, including the marked limitations and "C" criteria limitations. Therefore, Plaintiff failed to establish that the ALJ erred in finding Plaintiff's impairments did not meet Listings 12.04 and 12.06.

**C. Plaintiff's Symptom Reports: Plaintiff failed to establish error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must

---

[59] AR 19; *see* AR 876 ("[n]o motor deficit"); AR 13 (""[n]o gross motor/sensory deficits"); AR 717 ("[m]otor grossly intact"); AR 338 ("Motor strength testing (L2-S3) of hips, knee, and foot reveal 5/5 muscle strength present bilaterally.") ("Straight leg raise in supine position with passive dorsiflexion of foot is negative for radicular pathology bilaterally.").

make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[60] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[61] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence and Plaintiff's reported activities.[62]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[63] However, medical evidence is a relevant factor in considering the severity of the reported symptoms. [64] The ALJ cited several specific reasons why Plaintiff's reported disabling symptoms conflicted with the objective medical

---

[60] *Molina*, 674 F.3d at 1112.

[61] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[62] AR 23.

[63] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[64] *Id.*

evidence, including a May 2013 x-ray of Plaintiff's lumbar spine showing degenerative changes, a July 2013 MRI showing multilevel degenerative changes with mild disc desiccation and bulge contacting the L5 roots in the for amen at L5-S1, exams showing normal gait, improvement of lower lumbar pain with lipoma block, reports of sleeping through the night and Plaintiff being pleased with her treatment, and reports clearing Plaintiff of edema of lower extremities after switching medications.[65] This was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.[66]

Second, the ALJ's finding that Plaintiff's reported daily activities were inconsistent with her reported symptoms is rational and supported by substantial evidence.[67] Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict her testimony or meet the threshold for transferable work skills.[68] The ALJ may consider a claimant's activities that undermine reported symptoms.[69] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of

---

[65] AR 23-24.

[66] [66] *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[67] AR 24-25.

[68] *See Molina*, 674 F.3d at 1112-13.

[69] *Rollins*, 261 F.3d at 857.

exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[70] "[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability."[71] The ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities that meet "the threshold for transferable work skills" or "contradict the claimant's other testimony."[72] It is true that an ALJ may not first presume that a claimant conducts her activities of daily living differently than she contends and then use that presumption to support an adverse credibility finding.[73] However, here, even when consideration is given as to how Plaintiff testified that she conducts her activities of daily living, the ALJ's finding that they are inconsistent with Plaintiff's claims of being totally disabled is supported by substantial evidence in the record as a whole.

Here, Plaintiff alleged that she suffers from headaches and insomnia, and can only drive short distances, pick up a "little bit" at home, and grocery shop no

---

[70] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113.

[71] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001)).

[72] *Id.* at 639 (citing *Fair*, 885 F.2d at 603).

[73] *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999)).

more than thirty minutes before her back begins hurting.[74] However, the ALJ

noted Plaintiff reported to vacationing and traveling on long car rides.[75] In

addition, the record shows improvement in Plaintiff's insomnia, completing of daily

activities, and discontinued complaints of headaches.[76] These contradictions in

Plaintiff's activities rationally support the ALJ's decision to discount Plaintiff's

reported disabling symptoms.[77]

---

[74] AR 61-62.

[75] AR 25; *see* AR 456 ("Lower extremity edema, patient has been vacationing, has

been on long car rides, and not drinking enough fluids although she states she drinks

up to 4, 8-10 ounce, bottles of water a day.").

[76] AR 388, 476-79 (Plaintiff wakes up zero times at night, no more tossing and

turning, no longer daytime sleepiness upon wakening since initiating trazadone 50

mg, and pleased with current treatment.); AR 585 (February 11, 2016 treatment

records: "[Plaintiff] feels that current therapy is adequate. She notes improvement

in ability to perform household responsibilities and activities of daily living to her

satisfaction with current therapy."); AR 570, 573, & 576 (2016 treatment notes:

negative for dizziness, headaches, paresthesias, and weakness); AR 558 & 561 (2017

treatment records: negative for dizziness, headaches, paresthesias, and weakness).

[77] *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1991) (stating that an

ALJ may disbelieve a claimant if there are inconsistencies between the claimant's

testimony about his daily activities and his testimony about the nature, effect, or

In summary, Plaintiff failed to establish the ALJ erred by discounting her symptom reports.

**D.    Lay Witness Testimony: Plaintiff failed to establish error.**

An ALJ must consider the testimony of lay witnesses in determining how an impairment affects the claimant's ability to work, and, if the lay witness statements are rejected, the ALJ must give germane reasons for discounting such statements.[78] Plaintiff argues the ALJ failed to provide a germane reason for discounting the lay witness statement from Plaintiff's daughter, Melissa McCoy.

The ALJ assigned little weight to Ms. McCoy's statements because they essentially mirrored those of Plaintiff and were not fully supported by the objective medical findings.[79] Because these statements are similar to Plaintiff's symptom reports, and the ALJ properly discounted Plaintiff's symptom reports for clear and convincing reason, the ALJ needed only to point to the same reasons to discount this

_____

severity of his symptoms); S*molen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (explaining that, in determining the credibility of a claimant's testimony about the severity of symptoms, the ALJ may consider the claimant's daily activities).

[78] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

[79] AR 28.

lay testimony.[80] There were germane reasons for discounting Ms. McCoy's statements.

**E.    Step Five: Plaintiff failed to establish error.**

Plaintiff argues the ALJ erred at step five because the vocational expert's testimony was based on an incomplete hypothetical that failed to include "off-task and unproductive 10% or more of an eight-hour workday; and the need to recline with [Plaintiff's] legs up outside of scheduled breaks during the workday."[81] Plaintiff's argument is based entirely on her initial argument that the ALJ erred in considering the medical-opinion evidence, Plaintiff's symptom reports, and lay witness testimony. For the above-explained reasons, the ALJ's consideration of the medical-opinion evidence, Plaintiff's symptom reports, and lay witness testimony were legally sufficient and supported by substantial evidence. The ALJ did not err in finding Plaintiff capable of performing work existing in the national economy.[82]

---

[80] *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that where the ALJ provided clear and convincing reasons to discredit the claimant's subjective complaints, it follows that the ALJ also gave germane reasons to reject the claimant's wife's similar testimony).

[81] ECF No. 15.

[82] *See Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989) (holding it is proper for the ALJ to limit a hypothetical to those restrictions supported by substantial evidence in the record).

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 4th day of March 2020.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge